**Steven William BOCKLER,**
**Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 29A02–0810–CR–927.**

Court of Appeals of Indiana.

June 25, 2009.

Andrew M. Barker, Campbell Kyle Proffitt LLP, Carmel, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Gary Damon Secrest, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

RILEY, Judge.

*STATEMENT OF THE CASE*

Appellant–Defendant, Steven William Bockler (Bockler), appeals his convictions for Count I, operating a boat while intoxicated, a Class C misdemeanor, Ind.Code § 14–15–8–8(a)(2); Count II, resisting law enforcement, a Class A misdemeanor, I.C. § 35–44–3–3(a)(3); and Count III, public intoxication, a Class B misdemeanor, I.C. § 7.1–5–1–3.

Affirmed in part, reversed in part, and remanded with instructions.

*ISSUES*

Bockler raises three issues, which we restate as:

(1) Whether the State presented sufficient evidence to prove beyond a reasonable doubt that he was intoxicated to such an extent as to endanger any person;

(2) Whether the State presented sufficient evidence to prove beyond a reasonable doubt that he resisted law enforcement; and

(3) Whether the trial court abused its discretion when it ordered Bockler to pay restitution.

*FACTS AND PROCEDURAL HISTORY*

On June 29, 2007, Conservation Officer Ed Bollman (Officer Bollman) of the Indiana Department of Natural Resources was on patrol at Geist Reservoir in Hamilton County, Indiana, sitting in his boat located at a set of docks. Officer Bollman observed Bockler operating a motorboat while failing to display navigation lights although it was 11:30 p.m. While Officer Bollman was watching Bockler's motorboat, he heard either Bockler or one of the two male passengers aboard Bockler's boat holler at a boat with women aboard that was nearby. Bockler then accelerated his boat towards the boat with the women despite the fact that he was in an idle speed zone. Officer Bollman pulled out of the dock slip, turned his boat's emergency lights on, and navigated over to Bockler's boat. Officer Bollman thought Bockler stopped his boat in a reasonable amount of time and presented Officer Bollman with his license and the boat registration as requested. However, while Bockler was retrieving the registration, Officer Bollman observed Bockler exhibit problems with balance. Additionally, Officer Bollman saw a clear plastic trash bag with numerous empty beer cans sitting out on Bockler's boat. Officer Bollman asked Bockler if he had been drinking and Bockler responded that he had a couple of beers and some other drinks while eating at a restaurant earlier. Officer Bollman asked Bockler to recite the alphabet from the letter "C" through "N" without singing. (Transcript p. 22). Bockler attempted to do so, but instead recited the alphabet from the letter "A" through "Z". (Tr. p. 22). Officer Bollman then asked Bockler to perform two separate counting exercises, but each time when Bockler attempted to comply, he made several mistakes, although he assured Officer Bollman that he understood the instructions for the exercises.

Officer Bollman informed Bockler that he wanted to tow Bockler's boat to the docks and give him more sobriety tests. Bockler pleaded with Officer Bollman to let him go and permit one of the passengers of the boat take the controls, but Officer Bollman declined. Officer Bollman towed Bockler's boat to the docks, and a

probationary officer maneuvered Bockler's boat into a slip. Bockler got out of the boat, and Officer Bollman instructed him to stand in the middle of the dock while he tied his boat to the dock. When Officer Bollman turned to tie his boat, he noticed movement in his peripheral vision. He turned to see what was happening and saw Bockler's feet as he dove into the water. Officer Bollman waited 30 to 40 seconds for Bockler to surface and then began shouting for him. Officer Bollman did not see Bockler surface. Officer Bollman called the Hamilton County Sheriff's Department, and then took off his gun belt and made three dives searching for Bockler. He came upon a steel cable beneath the surface of the water and determined that it was too dangerous to continue the dives. Officer Bollman determined that Bockler had possibly drowned and waited for backup to arrive while searching around the docks and shore for Bockler.

Dive teams from the City of Indianapolis, the City of Lawrence, the Town of Fishers, and City of Noblesville arrived and began searching for Bockler. Around 2:00 a.m., while the search was still ongoing, Officer Bollman searched Bockler's boat and found a half-empty bottle of vodka in addition to the numerous empty beer cans.

Sometime near 3:30 a.m. Officer Bollman left Geist Reservoir and began traveling home. While in route, he was contacted and told that Bockler had been found. Officer Bollman returned to the scene and took Bockler into custody. He did not perform any additional sobriety tests because more than three hours had passed since he observed Bockler operating the motorboat, and Officer Bollman believed that the results of any such tests would be inadmissible to prove that Bockler had been intoxicated when operating the motor boat.

On August 21, 2007, the State filed an Information charging Bockler with: Count I, operating a boat while intoxicated, a Class C misdemeanor, I.C. § 14–15–8–8(a)(2); Count II, resisting law enforcement, a Class A misdemeanor, I.C. § 35–44–3–3(a)(3); and Count III, public intoxication, a Class B misdemeanor, I.C. § 7.1–5–1–3. On May 29, 2008, the trial court conducted a bench trial. At the close of evidence, the trial court found Bockler guilty as charged. On October 13, 2008, the trial court held a sentencing hearing. The trial court found that Count III merged into Count I and vacated the conviction on Count III. The trial court sentenced Bockler to 60 days, with 12 days ordered executed, 48 days suspended on Count I, and 365 days, with 120 days executed and 245 days suspended on Count II, all to be served in the Hamilton County Jail, with the sentences to run consecutively. Additionally, Bockler was ordered to pay costs and fees, which included restitution: (1) to the Indiana Department of Natural Resources in the amount of $575.49; (2) to the Fishers Police Department in the amount of $759.22; (3) to the Fishers Fire Department in the amount of $268.47; (4) to the City of Lawrence Fire Department in the amount of $4,448.25; and (5) to the Indianapolis Fire Department in the amount of $222.94.

Bockler now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Intoxication*

Bockler argues that the State failed to present sufficient evidence to sustain his conviction for operating a motor boat while intoxicated.

Our standard of review with regard to sufficiency claims is well settled. In reviewing a sufficiency of the evidence

claim, this court does not reweigh the evidence or judge the credibility of the witnesses. We will consider only the evidence most favorable to the verdict and the reasonable inferences drawn therefrom and will affirm if the evidence and those inferences constitute substantial evidence of probative value to support the judgment. A conviction may be based upon circumstantial evidence alone. Reversal is appropriate only when reasonable persons would not be able to form inferences as to each material element of the offense.

*Perez v. State*, 872 N.E.2d 208, 212–13 (Ind.Ct.App.2007), *trans. denied* (citations omitted).

Indiana Code section 14–15–8–8 provides, in pertinent part, that someone "who operates a motorboat ... while intoxicated; commits a Class C misdemeanor." Indiana Code section 14–15–8–3 defines "intoxicated" for purposes of the above statute, by stating:

As used in this chapter, "intoxicated" means under the influence of:

(1) alcohol;

(2) a controlled substance;

(3) any drug (as defined in IC 9–13–2–49.1) other than alcohol or a controlled substance; or

(4) any combination of alcohol, controlled substances, or drugs;

so that there is an impaired condition of thought and action and the loss of normal control of an individual's faculties to such an extent as to endanger any person.

Bockler specifically contends that the State failed to present sufficient evidence "to satisfy the endangerment element."[1] (Appellant's Br. p. 6).

Recently, in *Staley v. State*, 895 N.E.2d 1245 (Ind.Ct.App.2008), we considered an appeal of a conviction for operating a vehicle while intoxicated endangering a person. We explained that the endangerment requirement of that statute does not require that the State prove a person other than the defendant was actually in the path of the defendant's vehicle. *Id.* at 1251. We concluded that the facts sufficiently proving the endangerment element were that "Staley [was] driving fifty-five mile[s]-per-hour in a forty-five mile-per-hour zone and driving without his lights on." *Id.*

■ Here, we note that the two reasons given by Officer Bollman for stopping Bockler's boat were his failure to use navigation lights as required after sunset, and Bockler's act of accelerating in the idle speed zone. The requirements of navigation lights at night and use of idle speed in certain areas are without doubt requirements to promote safe boating, just as speed limits and headlights are to promote safety for vehicles traveling on public roads. As such, both of these facts are probative of whether Bockler's operation of the motorboat endangered others. Furthermore, the fact that Bockler offered to have one of the passengers operate his boat after he had difficulties performing the preliminary sobriety tests is probative of his own acknowledgement of his intoxication. Therefore, we conclude that the State presented sufficient evidence of pro-

---

1. Indiana Code section 14–15–8–3 has been amended by Public Law 69–2009, effective July 1, 2009, to remove the language "to such an extent as to endanger any person" from the definition of "intoxicated." However, Bockler was stopped while operating the motorboat prior to the effective date of Public Law 69–2009, and, therefore, we will apply Indiana Code section 14–15–8–3 as it existed when Bockler was stopped while operating the motorboat.

bative value to support an inference that Bockler endangered any person.

## II. *Resisting Law Enforcement*

Bockler argues that the State failed to present sufficient evidence to prove that he resisted law enforcement. Specifically, Bockler contends that the State failed to present evidence that Officer Bollman had given Bockler an order to stop. Bockler's contention focuses on the series of events that occurred after Officer Bollman saw him diving into the water.

Indiana Code section 35–44–3–3(a)(3) provides that:

A person who knowingly or intentionally:

. . .

(3) flees from a law enforcement officer after the officer has, by visible or audible means, including operation of the law enforcement officer's siren or emergency lights, identified himself or herself and ordered the person to stop;

commits resisting law enforcement, a Class A misdemeanor, except as provided in subsection (b).

Here Officer Bollman stopped Bockler by activating the emergency lights on his boat, pulled parallel to Bockler's boat, and informed Bockler that he was stopping his boat because of the failure to use emergency lights and an idle speed zone infraction. Officer Bollman observed signs that Bockler was intoxicated and informed Bockler that he was towing his boat to the docks for the purpose of performing more sobriety tests. After getting to the docks and helping Bockler out of his boat, Officer Bollman instructed Bockler where to stand on the dock. However, Bockler dove into the water at the first sign that Officer Bollman was distracted and swam away.

Bockler contends that the situation is analogous to the facts in *Czobakowsky v. State*, 566 N.E.2d 87 (Ind.Ct.App.1991), where a uniformed police officer approached Czobakowsky, who was at that time fleeing the scene of a shooting, and Czobakowsky ran from the police officer. We stated that

[i]t is unreasonable to conclude that the mere approach of an uniformed officer constitutes an order to stop whether the officer, in his patrol car, approaches a group of people in the street or, while on foot, approaches a group of people on the sidewalk, in the street, in a store or in a restaurant. To hold otherwise is to hold that anytime a person observes a police officer approaching the person must either stop or remain in place or risk being guilty of resisting law enforcement.

*Id.* at 89.

We conclude that Officer Bollman had done much more than merely approach Bockler. Indeed, Officer Bollman had performed a stop that was akin to a typical traffic stop, ordering Bockler to stop his boat by using his emergency lights. The evidence presented by the State proved beyond a reasonable doubt that the stop of Bockler had not yet ended when Officer Bollman instructed Bockler to stand on the dock, and, therefore, by diving into the water and swimming away, Bockler fled from a law enforcement officer.

## III. *Restitution*

Bockler argues that "[i]f [his] resisting law enforcement conviction is vacated, the entire restitution award must be vacated." (Appellant's Br. p. 18). However, we have concluded that the State presented sufficient evidence to prove that Bockler resisted law enforcement. Therefore, we need not consider whether the entire restitution amount is in error.

Bockler also claims that the trial court erred by awarding restitution to the City of Lawrence Fire Department (L.F.D.) without the L.F.D. proving that it had sustained any losses as a result of Bockler's crimes.

 A State entity may be considered a victim for purposes of restitution. *Ault v. State,* 705 N.E.2d 1078 (Ind.Ct.App. 1999). "Restitution is a means of impressing upon a criminal defendant the magnitude of the loss he has caused." *Kotsopoulos v. State,* 654 N.E.2d 44, 46 (Ind.Ct. App.1995). An order of restitution is within the trial court's discretion, and it will be reversed only upon a finding of an abuse of that discretion. *Green v. State,* 811 N.E.2d 874, 877 (Ind.Ct.App.2004). An abuse of discretion occurs when the trial court misinterprets or misapplies the law. *Id.*

Indiana Code section 35–50–5–3 lays out the requirements for a restitution order, by providing:

Except as provided in subsection (i) or (j), in addition to any sentence imposed under this article for a felony or misdemeanor, the court may, as a condition of probation or without placing the person on probation, order the person to make restitution to the victim of the crime.... The court shall base its restitution order upon a consideration of:

(1) property damages of the victim incurred as a result of the crime, based on the actual cost of repair (or replacement if repair is inappropriate);

(2) medical and hospital costs incurred by the victim (before the date of sentencing) as a result of the crime;

(3) the cost of medical laboratory tests to determine if the crime has caused the victim to contract a disease or other medical condition;

(4) earnings lost by the victim (before the date of sentencing) as a result of the crime including earnings lost while the victim was hospitalized or participating in the investigation or trial of the crime; and

(5) funeral, burial, or cremation costs incurred by the family or estate of a homicide victim as a result of the crime.

 Here, the L.F.D. sought the restitution award for reimbursement of the salaries of the responders that it sent to Geist Reservoir and for fees for use of the equipment during the search for Bockler. Chief Warren Todd (Chief Todd) testified on behalf of the Indianapolis Fire Department and stated that the claim for reimbursement was based upon the "Haz–Mat statute" and notice from the State Fire Marshall's Office. (Tr. p. 158–59). To help explain what Chief Todd was referring to, the State directs our attention to the Fire Department Notices for Schedule of Charges, Notice # 3 (Notice # 3), which provides that Fire Departments may charge "the owner of a vehicle or responsible party that is involved in a hazardous material or fuel spill or chemical or hazardous material related fire" certain fees and costs related to the response. (Appellee's Br. p. 16 (citing http://www.in.gov/ dhs/2755.htm (last visited June 8, 2009))). Chief Nathan Kempfer (Chief Kempfer) testified on behalf of the L.F.D. and explained that, similar to the Indianapolis Fire Department, its claims for reimbursement were billed "under the Haz–Mat statute." (Tr. p. 179). Chief Kempfer explained that some of the restitution he was seeking was for amortized depreciation of the equipment used and costs he felt entitled to pursuant to Notice # 3. Additionally, Chief Kempfer explained that certain pieces of the suits and equipment of the divers had to be replaced after every dive,

and those costs were also represented in L.F.D.'s request for reimbursement.

In *Henderson v. State*, 848 N.E.2d 341 (Ind.Ct.App.2006), we considered Henderson's challenge to a restitution award to Allstate Insurance for expenses which it incurred investigating a fire which she set. We acknowledged that Allstate sought restitution of money which it had *expended*, not money that it had *lost*. *Id.* at 346. For that reason, we concluded that Allstate's expenditures were not an appropriate basis for a criminal restitution award, although it would give rise to a civil claim that Allstate could pursue. *Id.*

Similarly, we conclude that some of the claims for reimbursement or expenses presented by the L.F.D. do not fit within the considerations for criminal restitution provided in Indiana Code section 35–50–5–3. This would include such things as amortized costs of equipment depreciation which Chief Kempfer described and other expense reimbursements. These requests for reimbursement may be appropriate for a civil claim in accordance with the Notice # 3, but they are not appropriate for a criminal restitution award. Therefore, the trial court abused its discretion by awarding the L.F.D. restitution based, in part, upon amortized depreciation and reimbursement claims pursuant to Notice # 3.

■ That being said, Bockler has conceded the appropriateness of a $200 restitution award to the Lawrence Fire Department, and the entirety of the restitution awarded to the Department of Natural Resources, the Fishers Police Department and Fire Department, and the Indianapolis Fire Department. Since he has conceded that restitution is proper for these amounts, we must conclude that those portions of the trial court's order of restitution are proper. In addition, Chief Kempfer provided evidence that certain materials had to be replaced after the search for Bockler. Replacement costs for these materials fall within the purview of the criminal restitution statute and are therefore appropriate for criminal restitution. *See* I.C. § 35–50–5–3(1). However, we cannot discern from the record before us what expenses/costs the L.D.F. claimed were attributable to replacement of these materials as opposed to amortized depreciation or general reimbursement pursuant to Notice # 3. Therefore, we remand for the trial court to enter an order of restitution for the amounts conceded by Bockler and for actual costs incurred by the L.F.D. for repairs and replacements required after its search for Bockler.

## CONCLUSION

Based on the foregoing, we conclude that the State presented sufficient evidence to prove beyond a reasonable doubt that Bockler operated a motor boat while intoxicated and resisted law enforcement. We also conclude that the restitution order appears to be based, in part, upon expenses which are not a proper consideration for criminal restitution. Therefore, we remand with instructions so that the trial court may adjust the restitution order.

Affirmed in part, reversed in part, and remanded with instructions.

KIRSCH, J., and MATHIAS, J., concur.