Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

ATTORNEY FOR APPELLANT:

**KIMBERLY A. JACKSON**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KELLY A. MIKLOS**
Deputy Attorney General
Indianapolis, Indiana



FILED
Feb 25 2013, 9:32 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ROBERT STOKES, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1206-CR-500 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Grant Hawkins, Judge
Cause No. 49G05-1112-MR-85729

**February 25, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Robert Stokes ("Stokes") was convicted in Marion Superior Court of murder and Class B felony unlawful possession of a firearm by a serious violent felon. Stokes appeals his convictions and argues that the State failed to present sufficient evidence to support his convictions.

We affirm.

## Facts and Procedural History

On March 31, 2010, Michael Conner ("Conner") and Jerry Howard ("Howard") drove to the corner of Roberta Avenue and Kessler Boulevard in Indianapolis. Conner was driving his car, and Howard was sitting in the passenger seat. While Howard was rolling a marijuana cigarette, he heard a gun shot. Conner immediately began to drive away. As Conner did so, Howard saw an African American man holding a black gun walk away from the car. During their escape down Kessler Boulevard, Conner lost consciousness. Only then did Howard realize that Conner had been shot. Howard managed to steer the car into a driveway at Kessler Boulevard and Eugene Street.

After stopping the car, Howard ran to the house and knocked on the door, and the occupant called 911. Indianapolis Metropolitan Police Officers and paramedics arrived on the scene soon thereafter. The paramedics treated Connor's gunshot wound at the scene, but the wound caused Connor to die shortly thereafter at Wishard Hospital.

Later that day, Detective Gregory Sheid ("Detective Sheid") of the Indianapolis Metropolitan Police Department ("IMPD") investigated the crime scene at Eugene and Kessler. During his investigation, Detective Sheid recovered a bullet casing from the floor of the passenger seat of Conner's vehicle. Another bullet casing was recovered in the street at the scene of the shooting at Roberta and Kessler, near some broken glass.

2

IMPD Officer Matthew Addington ("Officer Addington") was one of the first officers to respond to the scene. Howard told Officer Addington that the suspects were driving a black, box style, 80's model Caprice with no hubcaps and all black tires. Tr. p. 59. Officer Addington further testified that Howard was sweating and upset almost to the point of tears on the day of the shooting. Howard wanted to leave and kept looking around as if expecting the suspects to return. Tr. p. 60. Howard identified William Vest ("Vest") in a photo array on April 13, 2010. Tr. p. 182; Ex. Vol., State's Ex. 44 p. 58. At that time, Howard told Detective Sheid that Vest went by the nickname Mook. Tr. p. 182.

More than five months after the murder, on September 21, 2010, a Marion County Sheriff's Deputy interviewed Stokes after arresting him on an outstanding, but apparently unrelated, warrant. During the interview, Stokes asked to speak with the FBI regarding a homicide, and later that day, Stokes spoke with FBI Special Agent Steven Secor ("Agent Secor"). During the interview, Stokes claimed that he was riding in a car with Maurice Phillips ("Phillips") when Conner was shot. According to Stokes, Phillips got into a fight with someone, a gun discharged, and Phillips disposed of the gun in a lake. Stokes and Agent Secor drove to the Lakes of Georgetown apartment complex. Stokes escorted Agent Secor to the edge of a large lake behind the apartment complex and told the officers that Phillips allegedly threw the two pieces of the gun into the lake from that location. Agent Secor testified at trial that during a later meeting with Stokes, Stokes admitted that his story on September 21 was a lie. Stokes also mentioned to Agent Secor that he preferred .40 caliber guns because a 9mm gun would not effectively kill someone. Tr. p. 161.

After Agent Secor confirmed that there was an unsolved homicide in the time frame Stokes described, he began investigating Stokes's story. During a training dive with the Pike Township Fire Department, a firefighter found the receiver of a black, .40-caliber Glock handgun

3

a short distance from where Stokes originally told Agent Secor the gun was discarded. The recovered .40-caliber Glock was already known to the police through its original owner and had been test fired previously by the police. The crime lab's records showed that the recovered Glock left markings on bullet casings that mirrored those on the spent bullet casing found at the scene.

At the time of the shooting, there were three women in Stokes's life: Star Brown ("Brown"), the mother of two of Stokes's sons; Terran Larkin ("Larkin"), the woman Stokes was living with at the time of the murder, and finally, Audriana Austin ("Austin"), Stokes's girlfriend after Larkin. IMPD and FBI investigations of the shooting revealed that Stokes had discussed the events of March 31, 2010 with each of these women.

While testifying at trial, Brown could remember very little of her discussion with police. However, Brown and Stokes had communicated while Stokes was in jail awaiting trial, and Agent Secor listened to over forty of their conversations. During one conversation Stokes told Brown that, "if she wronged him in some way that she, she and another person would be floating in the White River."[1] Tr. p. 296.

Stokes and Larkin were living together at the Lakes of Georgetown Apartment complex at the time of Conner's murder. Larkin testified that Stokes told her that he took a gun apart and threw it behind the apartment complex. Tr. p. 100. Larkin further testified that Stokes drove a rented grey Impala, but Stokes's younger brother, Vest, drove a black Chevy. Tr. p. 101. This was consistent with Howard's report to Officer Addington on the day of the shooting.

Austin saw Stokes on the evening of March 31, 2010. She testified that he appeared nervous. Stokes told her that his younger brother, Vest, called Stokes and said that he had "got into some things with some other dudes." Tr. p. 80. Stokes had met Vest, and they got into an

---

[1] While this conversation pertained to another matter, not this particular prosecution, it could certainly explain Brown's poor memory at trial to a reasonable fact-finder.

altercation with the other men.  As Stokes slapped one of the men in the face with the pistol, the gun went off.  At that point Stokes ran.  Austin testified that Stokes appeared to be upset and seemed to regret what happened.

During Stokes's trial, Howard was extremely reluctant to testify.  He did not comply with several subpoenas, even hand-delivered subpoenas.  He appeared only after the court issued a body attachment, and the judge told Howard that he would go to jail if he did not appear.  During his testimony, Howard did not want his statement to Detective Sheid to be read in court, and it was not.

On May 22, 2012, following a bench trial, Stokes was found guilty of murder and of Class B felony unlawful possession of a firearm by a serious violent felon.  On May 30, 2012, the trial court sentenced Stokes to sixty years of imprisonment for murder, and to a concurrent, fifteen-year sentence for Class B felony unlawful possession of a firearm by a serious violent felon.  Stokes now appeals.

**Discussion and Decision**

Stokes argues that the evidence was insufficient to prove beyond a reasonable doubt that he shot Conner or possessed a gun as charged. He does not challenge his classification as a serious violent felon, however.  Upon a challenge to the sufficiency of evidence to support a conviction, we neither reweigh the evidence nor judge the credibility of the witnesses; instead, we respect the exclusive province of the trier of fact to weigh any conflicting evidence. McHenry v. State, 820 N.E.2d 124, 126 (Ind. 2005).  We consider only the probative evidence and reasonable inferences supporting judgment, and we will affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt.  Id.

5

The facts most favorable to the judgment reveal that Stokes told Larkin that he dismantled a gun and threw it behind the Lakes of Georgetown Apartments. Behind the Lakes of Georgetown Apartments is the lake where the receiver of a black .40-caliber Glock was recovered. The gun was recovered a short distance from the spot where Stokes told Agent Secor it had been thrown in the lake. Agent Secor testified that Stokes told him that his weapon of choice is a .40-caliber gun. Previous test fires of the recovered Glock produced bullet casings that mirrored the bullet casing recovered from the intersection where Conner was shot, Kessler Boulevard and Roberta Street.

Howard told Officer Addington on the day of the shooting that the suspects were driving a black, box style, 80's model Caprice with no hubcaps and all black tires. Larkin testified that Stokes's brother, Vest, drove a black Chevy. Austin testified that Stokes told her he had gotten into a fight on the day of the shooting and his gun had gone off. She said he appeared nervous and regretful. By suggesting that Brown would be floating in the White River if she wronged him in any way, Stokes tried to intimidate Brown while he awaited trial.

It is well-settled that circumstantial evidence can be sufficient to convict. Bockler v. State, 908 N.E.2d 342, 346 (Ind. 2009). The facts set forth above, and the reasonable inferences from those facts, are sufficient for a reasonable trier of fact, in this case a trial court judge, to find that Stokes murdered Conner with the gun recovered from the lake and that Stokes was in possession of that gun while a serious violent felon.

Affirmed.

KIRSCH, J., and CRONE, J., concur.