Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

ATTORNEY FOR APPELLANT:

**PATRICK A. DUFF**
Duff Law, LLC
Evansville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana

FILED
Apr 28 2014, 9:34 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BLAKE J. DRAPEAU, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 82A01-1310-CR-466 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE VANDERBURGH CIRCUIT COURT
The Honorable Kelli E. Fink, Magistrate
Cause No. 82C01-1307-FD-746

**April 28, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Blake J. Drapeau appeals after a jury trial, challenging only his conviction for one count of residential entry[1] as a Class D felony, contending that the evidence was insufficient to support his conviction and that the trial court abused its discretion in instructing the jury.

We affirm.

## FACTS AND PROCEDURAL HISTORY[2]

Drapeau needed a place to stay, so his biological father, John Brookhover, agreed to give him a place to stay at his house, but did not have the lease changed to add Drapeau's name. On June 30, 2013, Brookhover and Drapeau had some confrontations, which resulted in Brookhover telling Drapeau to leave if he did not like living there. Drapeau's grandmother came over to Brookhover's house, Drapeau gave her the keys to Brookhover's home, and she returned them to Brookhover after Brookhover told Drapeau to leave. Drapeau's grandmother also told Drapeau that he had to get out of Brookhover's house.

The next day Drapeau returned to Brookhover's house accompanied by his mother to retrieve some belongings he had left behind the day before. Brookhover was not home at that time, but Drapeau's grandmother was there. Later, when Brookhover returned, he noticed that Drapeau had not taken all of his belongings. Brookhover helped Drapeau's

---

[1] *See* Ind. Code §35-43-2-1.5.

[2] The record on appeal in this case was prepared pursuant to the Indiana Supreme Court's "Order For the Indiana Court Reporting Pilot Project By Using Professional Transcription Experts On Appeal[,]" issued on November 8, 2012, and effective on November 1, 2012. *See In re Pilot Project For Expedited Transcripts In the Preparation of the Record and Briefing on Appeal*, 977 N.E.2d 1010 (Ind. 2012). We are grateful for the ongoing cooperation of the Honorable Kelli E. Fink of Vanderburgh Circuit Court, eScribers, appellate counsel, and the Office of the Indiana Attorney General in the execution of this pilot project.

grandmother load the remaining belongings in her car, and she took them to Drapeau's mother's house.

On the evening of July 4, 2013, while fireworks were going off, Brookhover heard Drapeau "hollering" his name and tapping on a window of Brookhover's house. *Tr*. at 139. Brookhover called the police because he was "tired of messing with [Drapeau]." *Id*. Police officers responded to the call, but left after failing to locate Drapeau. Brookhover went to bed at approximately midnight after the fireworks had concluded. The following testimony is Brookhover's description of the events that happened next:

> All of the sudden, my door flies open, I come up off the bed, and the time I got off the bed, he - - -he hits me with this ten-inch round glass --- tan glass ashtray, splits my head open. And I don't know if he had something else he ripped in half, or something like that, and cuts me up --- cuts me a couple more places. Then I grabbed my phone, I was calling the police, and he sat out in the yard hollering to me to come out there, and this and that. And I stayed by my door, because I had blood all over me. I told the police that I'd need the police, and I [sic] that I think I also need an ambulance because I had blood all over me, and so then they both came and they took me to the hospital in the ambulance.

*Id*. at 140. In further explanation of how his door opened that night, Brookhover stated that the deadbolt lock on the door was broken and that the latch hook on his screen door had been ripped out.

When Brookhover's sister, Michelle Walker, picked him up from the hospital on July 5, 2013, Brookhover was bleeding from his head. Walker took Brookhover to his house, and when they arrived, they found Drapeau in Brookhover's bed. Drapeau came out of the bedroom with Brookhover's metal kitchen chair in his hand. Drapeau later went back into Brookhover's bedroom, picked up Brookhover's television, and acted as if he was going to hit Brookhover with it. Brookhover retrieved his taser, but Walker convinced

3

Brookhover to exit the house and call the police. Walker and Brookhover were waiting outside for the police when they observed Drapeau walk up to the door of the house. Drapeau said, "I'm John Kevin Brookhover; you don't live here no more." *Id*. at 144. The police arrived and took Drapeau away.

The State charged Drapeau with one count of residential entry as a Class D felony, one count of battery resulting in bodily injury as a Class A misdemeanor, one count of criminal trespass as a Class A misdemeanor, one count of false informing as a Class B misdemeanor, and one count of criminal mischief as a Class B misdemeanor. After his jury trial, Drapeau was found guilty of all charges. The trial court sentenced Drapeau to an aggregate sentence of 18 months executed in the Department of Correction. Drapeau now appeals from his conviction for residential entry.

## DISCUSSION AND DECISION

Our standard of reviewing claims of sufficiency of the evidence is well settled. When reviewing the sufficiency of the evidence, we consider only the probative evidence and reasonable inferences supporting the verdict. *Mork v. State*, 912 N.E.2d 408, 411 (Ind. Ct. App. 2009) (citing *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007)). We do not reweigh the evidence or assess witness credibility. *Id*. We consider conflicting evidence most favorably to the trial court's ruling. *Id*. We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id*. It is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id*. The evidence is sufficient if an inference may reasonably be drawn from it

4

to support the verdict. *Id*. A conviction may be based upon circumstantial evidence alone. *Bockler v. State*, 908 N.E.2d 342, 346 (Ind. Ct. App. 2009).

In order to establish that Drapeau had committed the offense of residential entry, the State was required to prove beyond a reasonable doubt that Drapeau knowingly or intentionally did break and enter Brookhover's home. Ind. Code § 35-43-2-1.5. The jury was instructed as follows:

> In Count I, the State has charged the defendant with the offense of residential entry, a Class D felony, in which the State has alleged that in Vanderburgh County, State of Indiana, on or about July 5, 2013, Blake John Drapeau did knowingly and intentionally break and enter the dwelling of John Brookhover, situated at 1205 Park Street, Evansville, Indiana, contrary to Indiana Law.

*Tr*. at 118.

A review of the evidence most favorable to the jury's verdict reveals that Drapeau had engaged in confrontations with Brookhover and was asked to leave Brookhover's home. Drapeau's grandmother came over to the house, Drapeau gave the key to Brookhover's house to her, which Drapeau's grandmother in turn gave to Brookhover, after Brookhover told Drapeau to leave. Drapeau's grandmother also told him that he had to leave Brookhover's house.

Drapeau returned to Brookhover's house the next day with his mother in order to retrieve more of his belongings. After Brookhover returned and discovered that some of Drapeau's possessions still remained, he helped Drapeau's grandmother load the belongings into the car. Drapeau's grandmother then took those things to Drapeau's mother's house. Drapeau was never listed on Brookhover's lease. Brookhover testified that the deadbolt lock on his door was broken and the latch on his screen door had been

ripped out. He testified that he awoke to find the door flying open, Drapeau entering, and then striking Brookhover with a glass ashtray. There is sufficient evidence in the record to support the jury's verdict.

Drapeau challenges the sufficiency of the evidence that he broke into Brookhover's house, contending that he had received mixed signals from his father about whether he could return and believed that he could return to Brookhover's home. In other words, he asserts his belief that he had his father's consent to enter the home where he was found upon Brookhover's return from the hospital. This argument, however, is an invitation for this court to reweigh the evidence, a task we are forbidden to undertake. *Mork*, 912 N.E.2d at 411. Resolution of conflicts in the evidence rests in the province of the fact-finder. *McKinney v. State*, 653 N.E.2d 115, 118 (Ind. Ct. App. 1995). As for the argument suggesting Drapeau believed he had Brookhover's consent, we have stated the following:

> Lack of consent is not an element of the offense the State is required to prove. Rather, it is the defendant who must claim and prove the defense of consent. A defendant's belief that he has permission to enter must be reasonable in order for the defendant to avail himself of the defense of consent.

*Id.* (internal citations omitted). The evidence does not support the conclusion that Drapeau reasonably believed he had permission to enter Brookhover's house.

Drapeau also challenges the trial court's instruction of the jury regarding the element of force required to find him guilty of residential entry. Jury instructions are left to the sound discretion of the trial court, and we may not reverse unless the trial court abuses that discretion. *Patton v. State*, 837 N.E.2d 576, 579 (Ind. Ct. App. 2005). A trial court abuses its discretion in the giving of jury instructions when the instruction misstates the law, such that it "so affects the entire charge that the jury was misled as to the law in

6

the case." *White v. State*, 547 N.E.2d 831, 835 (Ind. 1989). Jury instructions are to be considered as a whole, and we will not find that the trial court abused its discretion unless we determine that the instructions taken as a whole misstate the law or otherwise mislead the jury. *Davis v. State*, 835 N.E.2d 1102, 1113 (Ind. Ct. App. 2005), *trans. denied*.

The trial court instructed the jury as follows in Final Instruction 7(b):

> In order to establish that a breaking in has occurred, the State may introduce evidence from which the trier of fact could reasonably infer that the slightest force was used to gain unauthorized entry. The State must still prove this, and every element of the offense, as beyond a reasonable doubt.

*Tr.* at 222. Drapeau objected to the instruction arguing that it did not "actively" state the law and that it relieved the State of its burden. *Id.* at 208. The trial court overruled Drapeau's objection and gave the challenged instruction.

In order to establish that a breaking has occurred, the State need only introduce evidence from which the trier of fact could reasonably infer that the slightest force was used to gain unauthorized entry. *Bellmore v. State*, 602 N.E.2d 111, 124 (Ind. 1992). "Breaking is proved by showing that even slight force was used to gain unauthorized entry including opening an unlocked door." *Henley v. State*, 522 N.E.2d 376, 379 (Ind. 1988). Furthermore, the opening of an unlocked door is sufficient to establish that a breaking has occurred. *McKinney*, 653 N.E.2d at 117.

Therefore, Final Instruction 7(b) is a correct statement of the law, which was not inconsistent with the additional final instruction, which read as follows:

> Before you may convict the defendant in Count I, the State must have proved each of the following beyond a reasonable doubt: Number 1, the defendant, Blake John Drapeau; number 2, knowingly or intentionally; number 3, broke and entered the John Brookhover's dwelling at 1205 Park Street, Evansville, Indiana. If the State failed to prove each of these elements beyond a

7

> reasonable doubt, you must find the defendant not guilty of residential entry, a Class D felony, in Count I.

*Tr*. at 218. Both instructions inform the jury that the State must prove each element of residential entry beyond a reasonable doubt. Instruction 7(b) informs the jury of the level of force necessary to constitute a breaking, which is listed as an element of the second instruction set forth above. Drapeau's arguments that the instructions in combination were confusing or an incorrect statement of the law are unpersuasive.

Here, the evidence showed that Drapeau used such force to break into Brookhover's house that he split a deadbolt lock in the process. Thus, any error, would constitute harmless error. Errors in the decision to give or refuse instructions are harmless where a conviction is clearly sustained by the evidence, and the jury could not have found otherwise. *Buckner v. State*, 857 N.E.2d 1011, 1015 (Ind. Ct. App. 2006). The trial court did not abuse its discretion.

Affirmed.

MAY, J., and BRADFORD, J., concur.