**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jan 22 2015, 10:01 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**LEANNA WEISSMANN**
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JESSE R. DRUM**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

JOSHUA ADAM SPEARS,                        )
                                           )
    Appellant-Defendant,                   )
                                           )
            vs.                          )     No. 40A05-1405-CR-242
                                           )
STATE OF INDIANA,                          )
                                           )
    Appellee-Plaintiff.                    )

APPEAL FROM THE JENNINGS CIRCUIT COURT
The Honorable Jon W. Webster, Judge
Cause No. 40C01-1210-FD-221

**January 22, 2015**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Joshua Spears appeals his conviction, following a jury trial, for the class D felony battery of his fourteen-month-old stepson. Spears argues that the trial court abused its discretion when it admitted certain hearsay evidence over his objection. Spears also claims fundamental error regarding the admission of additional evidence to which he did not object. Finally, Spears challenges the sufficiency of the evidence to support his conviction. Finding no abuse of discretion or fundamental error, and finding the evidence sufficient, we affirm.

**Facts and Procedural History**

In 2004, Spears married a woman named Heather. Heather and Spears had three children together. During the marriage, Heather also gave birth to another child, J.M., whose biological father is Doug Mitchell. In 2012, Spears, Heather, and all four children were living in a trailer with Heather's mother. Spears and Heather had a tumultuous relationship that included daily arguments. On Wednesday, June 13, 2012, one of the children, seven-year-old J.S., refused to put his toys away in his bedroom. He was hitting and kicking Heather, who was eight months pregnant at the time. Heather awoke Spears and asked him to talk to J.S. Spears was angry when he went to deal with J.S. As Spears was speaking to J.S. and helping put toys away, fourteen-month-old J.M. was taking toys back out of the toy box. Spears pulled J.M. away from the box. When Spears did so, J.M. let out a "blood curling [sic] scream." Tr. at 156. J.M. continued to scream in a way that Heather and J.M.'s grandmother had "never heard him scream before" and in a way that they will "[n]ever forget." *Id*. at 156, 254. When Heather ran to check on J.M., Spears told her, "I think I

2

might have hurt him, I think I might have hurt [J.M.]. He was picking up, taking toys out of the toy box faster than we could put them in." *Id*. at 157, 255. Heather and Spears began to argue about the incident and Heather reminded Spears, "[H]e's just a baby … he don't [sic] know any better." *Id*. Heather decided to call J.M.'s father, Doug, to see if he could take care of J.M. for a few days. She was feeling overwhelmed and did not want J.M. around while she and Spears were "getting into it" like they were. *Id*. at 252. Doug agreed and J.M. stayed with his father until Heather picked him up that Friday.

On Friday, after J.M. returned home, the family was getting ready to go to a cookout. Spears was changing J.M.'s diaper on the laminate wood floor in the living room when J.M.'s grandmother observed Spears pinning J.M.'s arms on the floor with his leg. She noticed that Spears had "his leg down harder on [J.M.'s] arms than what usually he did." *Id*. at 160. J.M. was crying, but his grandmother was too busy getting everything ready for the cookout to investigate further. The next morning, Heather was giving J.M. a bath when she noticed that his arm was red, swollen, and painful for him when touched. Heather gave J.M. ibuprofen. She noticed later that day that J.M. "was crawling around on his forearms" and not his hands. *Id*. at 262. Doug picked up J.M. on Sunday and immediately knew that something was wrong. J.M. was "pretty much what you'd call screaming bloody murder. He was in pain." *Id*. at 111. Doug called Heather and told her that she needed to get J.M. to the hospital because "[h]e couldn't put any pressure on his arm." *Id*. Heather and her mother took J.M. to the hospital. X-rays revealed that J.M.'s arm was broken. The next day, an employee of the Indiana Department of Child Services ("DCS") took J.M. to be examined at

3

Riley Hospital for Children.  The doctor who examined J.M. at Riley determined that J.M. had a transverse fracture that was consistent with someone pulling, grabbing, yanking, or bending the arm suddenly.

The State charged Spears with class D felony battery.  A jury found Spears guilty as charged.  This appeal followed.

**Discussion and Decision**

**Section 1 – Admission of Evidence**

Spears first challenges the trial court's admission of certain evidence at trial over his objection.  A trial court has broad discretion in ruling on the admission or exclusion of evidence. *Palilonis v. State*, 970 N.E.2d 713, 726 (Ind. Ct. App. 2012), *trans. denied*.  An abuse of discretion occurs when the trial court's ruling is clearly against the logic, facts, and circumstances presented. *Id*.  When reviewing the admissibility of evidence, we do not reweigh evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Meredith v. State*, 906 N.E.2d 867, 869 (Ind. 2009).

During trial, DCS caseworker Johnna Badger was permitted to testify, over Spears's hearsay objection, about an interview that she conducted with J.S., J.M.'s then seven-year-old brother.  Badger testified,

> He reported that his mom and dad were fighting in their bedroom.  And dad, referring to [Spears], came into the living room.  Dad went to change [J.M.'s] diaper and [J.M.] was kicking.  He put [J.M.'s] arm down and threw it down. He said [the other children] were in [the girl's] room playing and [J.M.] started crying.  He said that his mom told his dad to go somewhere else and his dad, [Spears], left the house but came back later.

Tr. at 196.

4

Hearsay is a statement made out of court that is offered into evidence to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). Such hearsay is not admissible at trial unless it fits within some exception to the hearsay rule. *Kubsch v. State*, 784 N.E.2d 905, 919 (Ind. 2003). The trial court admitted Badger's testimony pursuant to Indiana Evidence Rule 801(d)(1)(C) which provides that out-of-court statements are not hearsay when the "declarant testifies at trial … and is subject to cross-examination concerning the statement, and the statement is … one of identification of a person made shortly after perceiving the person." "The term 'shortly' is relative, not precise; the purpose of the rule is to assure reliability.'" *Davis v. State*, 13 N.E.3d 939, 945 (Ind. Ct. App. 2014) (quoting *Dickens v. State*, 754 N.E.2d 1, 6 n.6 (Ind. 2001)), *trans. denied*.

Here, J.S., the declarant, later testified at trial and was available for cross-examination concerning his statement to Badger identifying Spears as touching J.M.'s arm in an angry manner.[1] Additionally, J.S.'s out-of-court statement to Badger was made twenty-one days after he witnessed Spears touch J.M. Therefore, the statement was made "shortly" after J.S. perceived the event and may be considered reliable. *See Kendall v. State*, 790 N.E.2d 122, 127 (Ind. Ct. App. 2003) (affirming admission of out-of-court statement of identification made one month after witness perceived event), *trans. denied*; *see also Robinson v. State*, 682 N.E.2d 806, 810 (Ind. Ct. App. 1997) (affirming admission of out-of-court statement of identification made two months and thirteen days after witness perceived event). The trial

---

[1] We note that although J.S. was available for cross-examination, Spears chose not to cross-examine J.S. because J.S. testified on direct examination that he never saw J.M. "get his arm hurt" and that he did not remember telling Badger about seeing something happen to J.M.'s arm. Tr. at 240.

court did not abuse its discretion when it admitted Badger's testimony regarding J.S.'s out-of-court statement.

## Section 2 – Fundamental Error

Spears also challenges the admission of additional testimony by Badger to which he did not object. Conceding that his failure to object would generally result in waiver of this issue on appeal, he frames his claim in terms of fundamental error. Our supreme court has explained,

> The fundamental error exception [to the contemporaneous objection rule] is extremely narrow, and applies only when the error constitutes blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. The error claimed must either make a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process. This exception is available only in egregious circumstances.

*Delarosa v. State*, 938 N.E.2d 690, 694 (Ind. 2010) (citations and quotation marks omitted). Recently, the court elaborated that a finding of fundamental error essentially means that the trial judge erred by not intervening when he or she should have, "even without being spurred to action by a timely objection." *Brewington v. State*, 7 N.E.3d 946, 974 (Ind. 2014), *petition for cert. filed* (Oct. 29, 2014).

After Badger had already testified regarding J.S.'s out-of-court statement identifying Spears as touching J.M.'s arm in angry manner, the State called J.S. as a witness. During his testimony, J.S. recanted his out-of-court statement to Badger and testified that he never saw his brother get injured and that he did not remember ever speaking to Badger about J.M.'s arm. The State later recalled Badger to the witness stand. The following colloquy occurred:

6

Q: Over the course of that time have you seen occasions where child witnesses will tell the authorities, the police, or CPS, will give them a statement and give a different statement in front of their parents?

A: Yes that happens often.

Q: Based on your training and experience dealing with kids and those types of situations do you have an opinion as to why that happens?

A: He just retraumatizes them, it's fear telling something in front of the perpetrator or the abuser that they're going to be in trouble more if they found out that they told what has happened, especially with [J.S.] when he was told to not be truthful with us to begin with.

Tr. at 277-78. Spears made no objection. Spears argues that this testimony constituted inadmissible vouching testimony pursuant to Indiana Evidence Rule 704(b)[2] or, in the alternative, unfairly prejudicial testimony pursuant to Evidence Rule 403[3], and that the erroneous admission of the testimony rose to the level of fundamental error.

Although she did reference J.S., Badger did not specifically opine regarding the truthfulness of his trial testimony. We do not think that her brief and nonspecific testimony explaining child recantation constituted improper vouching or was unfairly prejudicial. *See, e.g.*, *Otte v. State*, 967 N.E.2d 540, 544 (Ind. Ct. App. 2012) (holding that domestic violence expert's non-specific statements regarding victims of domestic violence and the propensity to recant was neither impermissible vouching testimony under Evidence Rule 704(b) nor

---

[2] Indiana Evidence Rule 704(b) provides: "Witnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions."

[3] Indiana Evidence Rule 403 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."

unfairly prejudicial under Evidence Rule 403), *trans. denied.* Moreover, even were we to conclude differently, in light of the testimony of additional witnesses and the ample circumstantial evidence of Spears's guilt discussed more fully below, we can say with confidence that the admission of Badger's testimony did not rise to the level of fundamental error. In other words, the harm or potential for harm was not so substantial that the trial judge should have intervened even absent objection. We have not been presented with the egregious circumstances necessary for reversal.

### Section 3 – Sufficiency of the Evidence

Lastly, Spears challenges the sufficiency of the evidence to support his conviction. When reviewing a challenge to the sufficiency of the evidence, we neither reweigh evidence nor judge witness credibility. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). Rather, we consider only the evidence and reasonable inferences most favorable to the verdict, and will affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id.* (citation omitted). It is not necessary for the evidence to overcome every reasonable hypothesis of innocence. *Id.* The evidence will be deemed sufficient if an inference may reasonably be drawn from it to support the conviction. *Id.* A conviction may be based upon circumstantial evidence alone. *Bockler v. State*, 908 N.E.2d 342, 346 (Ind. Ct. App. 2009).

To convict Spears of class D felony battery resulting in bodily injury on a child, the State was required to prove that Spears, who was at least eighteen years old, knowingly or intentionally touched fourteen-month-old J.M. in a rude, insolent, or angry manner that

8

resulted in bodily injury. Ind. Code § 35-42-2-1(a)(2)(B).[4] The evidence most favorable to the verdict reveals that, during the week preceding June 17, 2012, Spears hurt J.M. on two occasions. First, on Wednesday of that week, J.M. was taking toys out of the toy box when Spears pulled J.M. away from the box. When Spears did so, J.M. screamed out and continued to scream in a way that his mother and grandmother had "never heard him scream before" and in a way that they will "[n]ever forget." Tr. at 156, 254. When J.M.'s mother ran to check on J.M., Spears told his wife, "I think I might have hurt him, I think I might have hurt [J.M.]." *Id.* at 255. Then, on Friday, Spears was changing J.M.'s diaper on the laminate wood floor in the living room when J.M.'s grandmother observed Spears pinning J.M.'s arms on the floor with his leg. She testified that she noticed that Spears had "his leg down harder on [J.M.'s] arms than what usually he did." *Id.* at 160. Heather testified that the next morning she noticed that J.M.'s arm was red, swollen, and painful for him when touched. She also noticed that he "was crawling around on his forearms" and not his hands. *Id.* at 262.

Doctor Ralph Hicks examined J.M. the following Monday at Riley. He testified that J.M. suffered a transverse fracture that was "awfully unusual" compared to what an accidental fracture would look like in a child of J.M.'s age. *Id.* at 219. He testified that J.M.'s fracture was consistent with someone forcibly pulling, grabbing, yanking, or bending the arm suddenly.

---

[4] This statute was amended effective July 1, 2014. Because Spears committed his offense in 2012, we apply the statute in effect at that time.

Spears maintains that although it is undisputed that J.M.'s arm was indeed broken, "[n]o one knew how J.M. broke his arm" and the circumstantial evidence was insufficient to establish that Spears caused the injury. Appellant's br. at 10. Spears's claim is merely an invitation for us to reweigh the evidence in his favor, a task not within our prerogative on appeal. The jury could reasonably infer from the abovementioned evidence that Spears intentionally touched fourteen-month-old J.M. in a rude, insolent, or angry manner that resulted in bodily injury. His conviction for class D felony battery is affirmed.

Affirmed.

FRIEDLANDER, J., and KIRSCH, J., concur.